# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John A. Nordberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 2110 | **DATE** | 5/15/2013 |
| **CASE TITLE** | Timothy Holevis vs. Village of Sauk Village *et al.* | | |

**DOCKET ENTRY TEXT**

Defendant Enoch Benson's motion to dismiss Counts III and IV [5] is denied.

■[ For further details see text below.]  Docketing to mail notices.

## STATEMENT

Plaintiff Timothy Holevis has filed a race discrimination action under Title VII and 42 U.S. §§1981, 1983, and 1985. Defendants are the Village of Sauk Village, Lewis Towers (individually and as Mayor of Sauk Village), and Enoch Benson (individually and as a Trustee of Sauk Village). Before the Court is a motion to dismiss, pursuant to Rule 12(b)(6), filed by defendant Benson. He seeks to dismiss Counts III and IV in the First Amended Complaint. Count III is a claim for race discrimination under 42 U.S.C. § 1981. Count IV is a claim for conspiracy to interfere with civil rights under 42 U.S.C. § 1985. For the reasons set forth below, the motion is denied.

The complaint is lengthy (97 paragraphs) and describes in a fair amount of detail events over a several year period. However, to rule on the present motion, we need only set forth an abbreviated overview. The following allegations are assumed true for purposes of this Rule 12(b)(6) motion.

Plaintiff, who is a Caucasian male, worked for over 25 years as a police officer for Sauk Village. (¶ 8.) In April 2009, Lewis Towers, an African-American, was elected Mayor of Sauk Village. (¶ 9.) The gist of the complaint is that Towers, along with defendant Enoch Benson, who is also African-American, engaged in a campaign of race discrimination against plaintiff and others. Benson allegedly told an African-American police officer that the new administration was going to "take care of its own kind." (¶ 12.) Plaintiff alleges that Towers and Benson (and others) conspired to get plaintiff fired from his job as interim police chief so that they could hire a less qualified African-American candidate. To further this scheme, Benson allegedly made disparaging comments about plaintiff at Village board meetings (¶ 21) and also sent an email to citizens of the Village accusing plaintiff of taking $30,000 in unearned overtime pay (¶ 22). In this same email, Benson stated that he was working with the Mayor to "remove [Plaintiff] from the village employment status."(¶ 23.) Plaintiff alleges that defendants were motivated to fire him because of his race and also because he filed an earlier discrimination lawsuit. (*Id.*.)

As an initial matter, we note that the briefs are short and contain only cursory analysis of the legal tests and case law. Specifically, Benson's initial filing is two and a half pages with no cases cited; plaintiff's

**STATEMENT**

response is three and a half pages with only a few cases, none of which are discussed in any detail; and Benson's reply is just over three pages with only one case mentioned in passing. In contrast, the complaint is 15 pages, longer than all three briefs combined. Perhaps the relatively scant legal analysis is because, as discussed below, the arguments are essentially fact disputes. Nevertheless, in general, to persuade a court to dismiss claims, a party should provide the court with case law and should analyze the legal tests rather than merely reciting the elements of the test.

   As for the substantive arguments for dismissal, they all appear to be factual arguments at bottom. Benson asserts that he was only a Village Trustee and that the discriminatory actions set forth in the complaint were taken not by the Village Board of Trustees (of which he was a member) but were done by the Mayor, defendant Towers. We are not persuaded by this argument. Benson is being sued in both his official and individual capacities. The complaint alleges that he conspired with Towers and took various actions (*e.g.* sending emails to citizens accusing plaintiff of a crime) that may or may not be official actions of the Board. Unlike Title VII, Section 1981 allows claims to be brought against individuals. *See generally Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) ( "The cat's paw theory can support individual liability under § 1981 for a subordinate employee who intentionally causes a decision-maker to take adverse action against another employee in retaliation for statutorily protected activity."). In sum, what exact role Benson played in plaintiff's termination from the police chief job is a question that we cannot answer definitively now on a motion to dismiss; this is an issue to be sorted out through discovery.

   Benson's other arguments also turn on unresolved factual questions. He argues in his reply brief that the allegation in the complaint that he told another African American officer that the new administration would "take care of its own kind" is statement that is capable of being interpreted in a non-racial way and is thus not enough to show racial discrimination. (Reply at 2.) Benson does not go on to explain what this other interpretation is, but in any event, it does not matter because we are obligated under Rule 12(b)(6) to construe reasonable inferences in plaintiff's favor. By stating that the statement is "capable of" being interpreted one way suggests that it may also be interpreted other ways – *i.e.* to support a theory of race discrimination. The discovery process is where defendant Benson can develop evidence to support his theory. Benson also argues in his reply brief that plaintiff "was never terminated as Chief of Police." (*Id.*) The complaint, however, appears to allege that he was terminated (or demoted) as police chief on November 22, 2011. *See, e.g.*, ¶¶ 30, 33, 40. This is thus another fact dispute that we cannot resolve on a Rule 12(b)(6) motion to dismiss. These issues can be addressed later on a motion for summary judgment (if appropriate). For now, the parties should move forward with discovery.